IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEFENDANT A, DEFENDANT B; | ) | Case No. 12-CV-392-JHP-TLW |
| DEFENDANT C, and DEFENDANT D, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Before the Court is Defendant A's Motion to Dismiss (Doc. No. 9); Defendant Transitions Therapy, L.L.C's ("Transitions") Motion to Dismiss (Doc. No. 12); and Defendants C and D's Motion to Dismiss (Doc. No. 34). After review of the briefs, and for the reasons stated below, Defendant A's Motion to Dismiss is **DENIED**. Further, Transitions' Motion to Dismiss is **DENIED**, and Defendants C and D's Motion to Dismiss is **GRANTED** in part. Specifically, Defendant C and D's Motion to Dismiss is granted as to Count IV against Defendant C and as to all counts against Defendant D.[1]

**BACKGROUND**

Jane Doe ("J.D."), a sixteen year old student, attended a public high school in Mounds, Oklahoma, Defendant C (the "School District"), from 2008 through 2012. The School District is an educational institution that receives funding from the State of Oklahoma and the federal

---

[1] After review of Defendant C and D's Motion to Dismiss (Doc. No. 35), J.D. conceded that all claims against Defendant D should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). (Doc. No. 42 at 2). J.D. also conceded that Count IV of the Complaint, a state law claim for Intentional Infliction of Emotional Distress should be dismissed as to Defendant C. (*Id.*)

government.  J.D. began attending counseling sessions with Defendant A, a licensed professional counselor, in 2008.  The counseling sessions took place at J.D.'s high school during school hours.  During this time, Defendant A was an employee of Transitions, a single member L.L.C. created by Defendant A.  Sometime after J.D.'s counseling sessions began, Defendant A began making inappropriate sexual comments to J.D.  On December 2, 2010, Defendant A began sexually abusing J.D. at the school during school hours while J.D. was supposed to be receiving counseling services from Defendant A.  The sexual abuse continued until July 8, 2011, when J.D.'s mother became aware of the abuse.  At some point before Defendant A began sexually abusing J.D., a report was made to the high school principal employed by the School District regarding sexually suggestive communications between Defendant A and other female students attending the high school.  After receiving this report, the School District took no action to investigate the report or prevent Defendant A from providing counseling to students during school hours at the high school.

## DISCUSSION

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* at 679.  The question to be decided is "whether the complaint sufficiently alleges facts

supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon,* 495 F.3d 1182, 1186 (10th Cir.2007) (internal quotation omitted).

### A.  State Law Tort Claims

The Court finds J.D.'s allegations sufficient to state claims of negligent hiring, supervision, and failure to warn of Defendant A against Transitions.  Transitions argues that in order to survive a motion to dismiss pursuant to Rule 12(b)(6), J.D. must specifically allege that "Defendant A provided counseling services to [J.D.] as part of his employment with Transitions."   (Doc. No. 12 at 3) (emphasis omitted).   This contention ignores the express directive that the Court "draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

As a matter of logic, the Court may easily infer that Defendant A's conduct occurred as a part of his employment with Transitions.  In the Complaint, J.D. alleges that Defendant A was an employee of Transitions at the time the abuse occurred.  Next, J.D. alleges that Transitions was negligent in its hiring and supervision of Defendant A because it failed to discover his dangerous propensities and prevent him from being alone with J.D. at the high school.  Further, J.D. also alleges that Transitions failed to properly staff its operation, thereby allowing Defendant A exclusive control over J.D.  At a minimum, these allegations suggest that Transitions had the ability to control Defendant A's behavior during his counseling sessions with J.D. Therefore, these allegations, taken together, are sufficient to allow the Court to draw a reasonable inference that Defendant A's counseling services were provided as a part of his employment with Transitions.  Accordingly, J.D.'s complaint is sufficient to state a claim against Transitions for negligent hiring, supervision, and failure to warn.  Transition's motion to dismiss Count V of the Complaint will be denied.

In addition, the Court finds J.D.'s allegations sufficient to state a claims for negligent failure to provide a safe environment, negligent hiring, failure to adequately supervise Defendant A, failure to warn of Defendant A, and negligent staffing against the School District.  The Court finds that J.D.'s allegations provide a sufficient factual basis to support each of the aforementioned claims against the school, and, therefore, denies the School District's Motion to Dismiss these claims.

### B. Respondeat Superior

J.D. asserts that Transitions is liable for Defendant A's tortious conduct under a theory of *respondeat superior*.  Transitions contends that it cannot be vicariously liable for Defendant A's tortious conduct because Defendant A's conduct was not within the scope of his employment with Transitions.

"*Respondeat superior* is a legal theory that holds an employer liable for the willful torts of an employee acting within the scope of employment in furtherance of assigned duties." *Schovanec v. Archdiocese of Oklahoma City*, 188 P.3d 158, 161 (Okla. 2008) (citing *N.H. v. Presbyterian Church (U.S.A.)*, 998 P.2d 592, 598 (Okla. 1999)).  In *N.H.*, the Oklahoma Supreme Court "stated that predatory sexual conduct by an ecclesiastic officer against a parishioner is an act that occurs outside the scope of the ecclesiastic's employment as a matter of law." *Id.*  But the *N.H.* court did not hold that predatory sexual conduct by an employee was *always* outside the scope of employment as a matter of law.

In *Schovanec v. Archdiocese of Oklahoma City* the Oklahoma Supreme Court emphasized the rationale underlying its decision in *N.H.* explaining,

> [a]lthough we spoke of sexual predatory conduct as outside the scope of employment as a matter of law, that language was based upon the fact that no reasonable person would conclude that predatory sexual conduct was part of, and in the furtherance of, the ecclesiastical organization's business.

188 P.3d at 161 (citations omitted).  Thus, the dispositive issue is whether a reasonable person could conclude that Defendant A's sexual conduct was done in furtherance of Transitions business.

To be sure, the Court recognizes that it is rare for an organizations business to include abhorrent conduct such as sexual abuse.  However, it is certainly plausible, given the circumstances of this case, that Transitions is a sole-member L.L.C., and Defendant A is the sole managing member in charge of formulating institutional goals and objectives.  As such, it cannot be summarily concluded that Transitions' objectives did not include taking steps to facilitate Defendant A's predatory behavior.  Rather, this issue presents a question of fact to be determined during the parties' discovery.  Accordingly, Transitions' motion to dismiss Count VI of the Complaint is denied.

### C.  Title IX

Title IX provides in pertinent part that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance ."  20 U.S.C. § 1681(a). Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district.  *Franklin v. Gwinnett County Public School,* 503 U.S. 60, 75-76 (1992).  As an initial matter, it is uncontested that the School District is subject to the terms of Title IX because it receives federal financial assistance.

Pursuant to Title IX, liability may be imposed on an educational institution such as the School District for an individual's sexual harassment of a student only if a school official has actual notice of the misconduct and acts with deliberate indifference in failing to respond to the situation. *Gebser v. Lago Vista Independent School District,* 524 U.S. 274 (1998).  *See also*

*Morse v. Regents of University of Colorado,* 154 F.3d 1124 (10th Cir.1998); *Bostic v. Smyrna School District,* 418 F.3d 355, 360 (3d Cir.2005).

In *Gesber v. Lago Vista Independent School District,* 524 U.S. 274 (1998), the United States Supreme Court explained that Title IX conditions an offer of federal funding "on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of federal funds." *Id.* at 286. The Court explained that the contractual nature of Title IX prohibits the imposition of liability based on principles of constructive notice or respondeat superior; in order to be liable, the funding recipient must be actually aware of discrimination in its programs and fail to remedy such discrimination. *Id.* at 287-88. The Court therefore concluded that "a damages remedy will not lie under Title IX unless an official *who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf* has actual knowledge of discrimination in the recipient's program and fails to adequately respond." *Id.* at 290 (emphasis added). The Court also emphasized that to be actionable, "the response must amount to deliberate indifference to discrimination ... The premise, in other words, is an official decision by the recipient not to remedy the violation." *Id.*

The School District contends that the allegations in the Complaint fail to demonstrate that actual knowledge of the sexual harassment was possessed by someone with authority to address the alleged discrimination and institute corrective measures. In the Complaint, J.D. makes the following allegations:

> 50. [The School District], through its (sic) principal had actual knowledge of the proclivities of Defendant A before these incidents occurred.
>
> 51. The [School District] had been put on notice that Defendant A was sending suggestive text messages and social media contacts to minor female students.

6

(Doc. No. 2 at 16).  The Court finds that these allegations are sufficient to state a claim for relief under Title IX.

Providing notice to the school principal of Defendant A's discriminatory tendencies satisfies the actual notice requirement.  Case law supports the proposition that on-site school administrators, such as principals and assistant principals, qualify as "appropriate persons" in Title IX cases. As was explained in *Warren v. Reading School District,* 278 F.3d 163, 169-70 (3d Cir.2002), the *Gesber* Court itself assumed that a school principal was an "appropriate person":

> Although the [*Gesber* ] Court itself did not explicitly state whether a school principal can be an "official" or "appropriate person" under Title IX, we think it is obvious from the Court's discussion that knowledge of a principal can be sufficient in an appropriate case. The only official with information about the teacher's misconduct in *Gesber* was the principal. The Court examined his actual knowledge and concluded that it was not sufficient for liability under Title IX, *Gesber,* 524 U.S. at 291-92, 118 S.Ct. 1989. The Court's analysis in *Gesber* rested upon the supposition that a principal is usually high enough up the bureaucratic ladder to justify basing Title IX liability on his or her actual knowledge and deliberate indifference. If a principal is not "an appropriate person" for purposes of Title IX, a substantial portion of the Supreme Court's analysis is *Gesber* was nothing more than a meaningless discussion.

Additionally, in *Murrell v. School District No. 1,* 186 F.3d 1238, 1243-47 (10th Cir.1999), the Tenth Circuit ruled that persons who were designated by school policies to "receive such complaints" are "appropriate persons," including "teacher[s], guidance counselors and vice principals ..." In *Montgomery v. Independent School District No. 709,* 109 F.Supp.2d 1081, 1099 (D.Minn.2000), the court concluded that, where a sexual harassment policy imposes upon teachers a duty to convey reports of sexual harassment to the school principals, teachers became "appropriate persons" with authority to take "at least this minimal corrective measure which, if effectively carried out, would impart knowledge of the harassment to higher School District officials with even greater authority to act."

The School District argues that the principal was not an appropriate person to receive complaints for purposes of Title IX because Defendant A was not an agent of the school. In support of this contention, the School District cites *Santiago v. Puerto Rico*, 655 F.3d 61 (1st Cir. 2011), where the First Circuit Court of Appeals held that a school district was not liable under Title IX after a student was sexually abused by bus driver employed by a private bus company the school district contracted with to provide transportation services. *Id.* at 66. The *Santiago* court explained that "[t]he lines of institutional authority vis-à-vis an employee of a third-party contractor are often blurred. Everything depends on "the recipient's degree of control over the harasser and the environment in which the harassment occurs." *Id.*

The Court has no doubt that there are circumstances where a school district has sufficient control over the harasser and the environment to confer the ability to remedy the harassment on a school district even though the harasser is not a school district employee. This proposition is supported by the rationale provided by the Supreme Court in *Davis ex. rel Lashonda D. V. Monroe County Board of Education*, 526 U.S. 629 (1999). In *Davis*, the Supreme Court explained that liability under Title IX does not arise simply

> because [a] 'teacher's actions [were] treated' as those of the funding recipient; the district was directly liable for its *own* failure to act. The terms 'subjec[t]' and 'under' impose limits, but nothing about these terms requires the use of agency principles.

*Davis*, 526 U.S. at 645-56 (emphasis original). Thus, a school official may be an appropriate person to receive complaints of harassment even if the harasser is not a school employee. For example, school districts are subject to Title IX liability where the school fails to properly respond to "student-on-student sexual harassment that takes place while the students are involved in school activities or otherwise under the supervision of school employees." *Id.* In addition, the *Davis* court noted "that the nature of [the State's] power [over public school children] is custodial

and tutelary, permitting a degree of supervision and control that could not be exercised over free adults." *Id.*

Here, the Court finds the School District's control over the environment in which the harassment occurred is sufficient to confer the authority to remedy the harassment upon the school principal. The sexual abuse occurred at the school during school hours. Although Defendant A was not an employee of the School District, there were ample remedial actions that could have been taken by the School District to remedy the sexual harassment by Defendant A. For example, the School District could have exercised its inherent authority over its property to prohibit Defendant A from coming on school property and abusing J.D. Further, the School District could also have prevented J.D. from attending counseling sessions with Defendant A during school hours. Accordingly, the Court finds that the school principal was an appropriate person to be given actual notice of the harassment.

The School District also argues that J.D. failed to make allegations sufficient to demonstrate that the school principal had actual knowledge of the sexual abuse. In the context of Title IX claims, courts universally recognize that "actual notice" exists where a school has information indicating a "substantial danger" to students. *See Bostic v. Smyrna School District,* 418 F.3d 355, 360-61 (3d Cir.2005); *Folkes v. N.Y. College of Osteopathic Medicine of N.Y. Institute of Technology,* 214 F.Supp.2d 273, 284-85 (E.D.N.Y.2002). However, the actual notice standard "does not set the bar so high that a school district is not put on notice until it receives a clearly credible report of sexual abuse from the plaintiff-student. At some point ... a supervisor school official knows ... that a school employee is a substantial risk to sexually abuse children ..." *Gordon v. Ottumwa Community School District,* 115 F.Supp.2d 1077, 1082 (S.D.Iowa 2000).

The *Gordon* court recognized that evidence of a single, uncorroborated report of inappropriate touching of a female student created a jury question regarding "actual notice." *Id.* That outcome is consistent with the general rule that even uncorroborated complaints about a teacher that the teacher denies creates a jury question about whether the school district was on notice of a substantial risk to students. *Doe v. Green,* 298 F.Supp.2d 1025, 1034 (D.Nev.2004) quoting with approval (*Hart v. Paint,* 2002 WL 31951264). Actual notice can be established, for example, by reports of inappropriate physical conduct with a student and rumors of a teacher's sexual activities with students. *See Doe v. School Administrative Dist. No. 19,* 66 F.Supp 57, 63 (D.Me.1999).

Here, J.D. alleged that the principal received information of inappropriate conduct by Defendant A before the sexual abuse in question occured.  Specifically, a report was made to the principal regarding sexually suggestive communications between Defendant A and other female students attending the high school.  The Court finds these allegations sufficient to demonstrate that the School District had actual notice of a substantial risk to students attending counseling sessions with Defendant A.

Finally, the School District argues that J.D. failed to demonstrate that the high school principal was deliberately indifferent.  Title IX "does not require specific responses [but] it does require a reasonable response once a school receives actual notice of a substantial risk. *Vance v. Spencer County Public School District,* 231 F.3d 253, 262 (6th Cir.2000). Often, the minimum required response to avoid "deliberate indifference" is for the school to conduct a legitimate investigation.  In the Complaint, J.D. alleges that the School District "failed to reasonably investigate prior complaints about Defendant A's sexual harassment and discrimination."  (Doc. No. 2 at 17).  Thus, J.D.'s allegations are sufficient to demonstrate deliberate indifference.

**D.  28 U.S.C. § 1983**

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must prove a deprivation of a constitutional right by someone acting under color of state law. *See A. Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999). In suits against a governmental entity, it is not enough for plaintiff to show the deprivation of a constitutional right by an agent or employee of the governmental unit. Rather, a civil rights plaintiff must identify an official policy or custom of the government that causes the deprivation of a constitutional right. The causal link between the policy and the deprivation must be readily apparent; all that is needed is a statement of the policy and its enforcement. *See City of Springfield v. Kibbe,* 107 S.Ct. 1114, 1119 (1987). Thus, municipal liability, requires that Plaintiff establish a deprivation occasioned through the enforcement of an official policy, procedure, custom or usage. *See Monnell v. Dept. of Social Ser's of New York City,* 436 U.S. 658, 690 (1978).

In *Monnell,* the United States Supreme Court made clear that municipal liability under Section 1983 cannot be premised on theories of respondeat superior. As noted above, the constitutional deprivation must result from the application of an official policy or practice of the governmental entity. As a result, a school district can be liable under § 1983 when its failure to follow procedures to investigate sexual harassment becomes so widespread as to become a custom. *Murrell,* 186 F.3d at 1249-50. Liability arises under *Monnell* when a school district adopts procedures or customs that are indifferent to the risk that students will be molested by teachers or students. *See City of Canton v. Harris,* 489 U.S. 378, 388-89 (1989).

The Court finds J.D.'s allegations sufficient to state a claim under § 1983.  J.D. alleges that no investigation or other remedial actions occurred after the School District received reports of sexually suggestive communications between Defendant A and another female student.  (Doc.

No. 2 at 19).  Further, J.D. clearly alleges that the School District "either maintained policies and procedures, or failed to develop policies and procedures, which would identify, report, or investigate suspected offensive conduct."  (*Id.* at 18).  The Complaint also states that "[a]ll actions taken by the individual Defendants with respect to [J.D.] were (sic) in furtherance of Defendants' governmental policy regarding education matters."  (*Id.* at 19).  Moreover, the Complaint provides that Defendant A's abuse was centered around a school policy allowing him access to J.D. on School District property during school hours.  (*Id.* at 10).  Accordingly, J.D.'s allegations are sufficient to state a claim for relief under 28 U.S.C. § 1983.

### E.  12 Okla. Stat. § 19

In their Motions to Dismiss, both Defendant A and Transitions argue that J.D.'s claim for professional negligence should be dismissed for failure to comply with Oklahoma state pleading standards outlined in 12 Okla. Stat. § 19.  Pursuant to 12 Okla. Stat. § 19, a plaintiff in a professional negligence action is required to attach an affidavit attesting that the plaintiff has consulted with a qualified expert and obtained that expert's written opinion regarding the merits of plaintiff's claim.  *Id* at § 19(A)(1).  If a plaintiff fails to attach the required affidavit, the state court is required, upon defendant's motion, to dismiss plaintiff's claims without prejudice.  *Id.* at § 19(A)(2).

A federal court sitting in diversity must apply state substantive law, but procedural matters are governed by federal law.  *Erie v. Tompkins,* 304 U.S. 64, 78, 92 (1938); *Aspen Orthopaedics & Sports Medicine, LLC v. Aspen Valley Hosp. Dist.,* 353 F.3d 832 (10th Cir. 2003); *Boyd Rosene & Assoc., Inc. v. Kansas Mun. Gas Agency,* 174 F.3d 1115 (10th Cir. 1999).  However, the application of *Erie* does not simply turn on whether a state statute can be characterized as procedural or substantive.  *Hefley v. Textron, Inc.,* 713 F.2d 1487, 1497 (10th

Cir. 1983).  One of the key purposes of the *Erie* doctrine is to ensure that "the outcome of the litigation in federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." *Guaranty Trust Co. of New York v. York,* 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

When state law mandates a different procedure from the Federal Rules of Civil Procedure, a district court must determine whether the state and federal rules are in direct conflict.  *Trierweiler v. Croxton & Trench Holding Corp.,* 90 F.3d 1523, 1539 (10th Cir.1996). It is not enough for the federal and state rules to simply overlap.  *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1539-40 (10th Cir. 1996).  Rather, it is "whether, when fairly construed, the scope of [the Federal Rule] is 'sufficiently broad' to cause a 'direct collision' with the state law or, implicitly, to 'control the issue' before the court, thereby leaving no room for the operation of [the state] law."  *Burlington Northern R.R. Co. v. Woods,* 480 U.S. 1, 4-5 (1987) (quoting *Walker v. Armco Steel Corp.,* 446 U.S. 740, 749-50 (1980); *Hanna,* 380 U.S. at 471-472).  If a Federal Rule of Procedure comes into direct conflict with a state procedural rule, a federal court sitting in diversity must apply the federal rule.  *Hanna v. Plumer,* 380 U.S. 460, 471 (1965) (Fed.R.Civ.P. 4 should be used to determine appropriate methods for service of process in diversity cases even when service does not comply with state law governing service of process); *Sims v. Great American Life Ins. Co.,* 469 F.3d 870, 877 (10th Cir. 2006) (*Erie* is inapplicable when state law comes into conflict with a Federal Rule of Civil Procedure).

Here, the Court finds that 12 Okla. Stat. § 19 is in direct conflict with Fed.R.Civ.P. 8.  12 Okla. Stat. § 19 imposes an additional requirement on professional negligence pleadings, the attachment of an affidavit at the time of filing, not required by Fed.R.Civ.P. 8.  The affidavit requirement imposed by Oklahoma's pleading standards interferes with the operation and

13

application of Fed.R.Civ.P. 8.  *See Spottedcorn v. Advanced Corr. Healthcare, Inc.*, CIV-11-1096-C, 2011 WL 6100653 (W.D. Okla. Dec. 7, 2011);  *Estate of C.A. v. Grier,* 752 F.Supp.2d 763, 770–71 (S.D. Tex. 2010); *Long v. Adams,* 411 F.Supp.2d 701, 709 (E.D. Mich. 2006) (refusing to apply Michigan's affidavit of merit requirement in a diversity malpractice suit); *Baird v. Celis,* 41 F.Supp.2d 1358, 1361 (N.D. Ga. 1999) (finding expert affidavit in direct conflict with pleading standards required by Fed.R.Civ.P. 8(a)); *Braddock v. Orlando Reg'l Health Care Sys., Inc.,* 881 F.Supp. 580, 583–84 (M.D. Fla.1995); *Boone v. Knight,* 131 F.R.D. 609, 611 (S.D. Ga.1990).  Accordingly, J.D. is not required to submit the affidavit required by 12 Okla. Stat. § 19 in federal court.[2]

## CONCLUSION

For the reasons detailed above, Defendant A's Motion to Dismiss is **DENIED**.  Further, Transitions' Motion to Dismiss is **DENIED**, and Defendants C and D's Motion to Dismiss is **GRANTED** in part.  Specifically, Defendant C and D's Motion to Dismiss is granted as to Count IV against Defendant C and as to all counts against Defendant D.

James H. Payne
United States District Judge
Northern District of Oklahoma

---

[2] Because both Defendant A and Transitions' Motions to Dismiss were denied based on application of federal law, J.D.'s assertion that 12 Okla. Stat. § 19 violates the Oklahoma Constitution need not be addressed.