**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **HAILEY LANG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 12-CV-0392-JHP-TLW** |
| **RAMON HERRERA, TRANSITIONS** | ) | |
| **THERAPY, LLC, and INDEPENDENT** | ) | |
| **SCHOOL DISTRICT NO. 5 OF CREEK** | ) | |
| **COUNTY, OKLAHOMA,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Before the Court are Defendant Independent School District No. 5 of Creek County's (the "School District") Motion for Summary Judgment and brief in support thereof, [Doc. Nos. 106, 107]; Plaintiff's Response to the School District's Motion for Summary Judgment, [Doc. No. 124]; and the School District's Reply thereto, [Doc. No. 161]. After review of the briefs, and for the reasons stated below, the School District's Motion for Summary Judgment is **GRANTED.**

## BACKGROUND

### A.  Procedural History

On June 22, 2012, Plaintiff commenced the instant action in the District Court for Creek County, Oklahoma, asserting claims rooted in both state and federal law. [Doc. No. 2, Ex. 1]. On July 13, 2012, the School District removed the case to this Court pursuant to 28 U.S.C. § 1441 and 1446. [Doc. No. 2]. In her Complaint, Plaintiff asserted the following causes of action against the School District: (1) intentional infliction of emotional distress, (2) a claim for violation of 20 U.S.C. §§ 1681-1688 (Title IX of the Education Amendments of 1972, "Title IX"), (3) a claim brought pursuant to 42 U.S.C. § 1983, and (4) negligence. On August 10, 2012,

the School District filed a Motion to Dismiss the claims asserted by Plaintiff.  [Doc. No. 34].

The Court granted the School District's Motion to Dismiss in part, dismissing Plaintiff's claim

for intentional infliction of emotional distress.  [Doc. No. 69].  Then, on June 14, 2013, the

School District filed the Motion for Summary Judgment [Doc. No. 106], which is now fully

briefed and before the Court.  [*See* Doc. Nos. 107, 124, and 161].  Finally, the Court held a

hearing regarding the School District's Motion for Summary Judgment on August 13, 2013.

[Doc. No. 174].

**B.  Factual Background**

Ramon Herrera was formerly a professional counselor licensed by the Oklahoma State

Department of Health. The School District's elementary school, middle school, and high school

are located on the same campus.  At all times relevant to this litigation, Herrera worked with

adolescents at Mounds Middle School and Mounds High School, which are operated by the

School District, providing counseling services to students during school hours.  Herrera was not

a School District employee; rather, he provided services through a limited liability of which he is

the sole member.  Further, Herrera did not receive any of his compensation from the School

District.  For the most part, Herrera's services were provided at the request of parents, who

directed Herrera to meet with their children at school during school hours.  However, Herrera

also provided services to students with whom he did not have a contractual relationship.

Moreover, the School District allowed Herrera to interact with client and non-client students

during lunch, in between class sessions, and after school was adjourned.

All visitors to the School District are required to check in at the principal's office of the

building they are visiting and state their business.  Outside counselors, such as Herrera, were

required to check in at the principal's office each time they visited the school district.  In

addition, when an outside counselor first began seeing a client or clients at the School District, the counselor was required to present his or her state-issued credentials at each visit until the School District's staff became familiar with the counselor.

During the 2008-09 school year, two separate complaints regarding Herrera's communications with a female student, T.M., were received by Kerry Berry ("Principal Berry"), principal of the School Districts' middle school during the 2008-09 school year. T.M., who was a student at Mounds Middle School, encountered Herrera at the park in Mounds, Oklahoma and at the public library with students he counseled, including her friend T.P. The park, which is next to the public library and across the street from the Mounds police station, is a common place for people to meet. T.M. believes she gave Herrera her telephone number during one of these encounters. Sometime during her seventh or eighth grade year of school, T.M. confided to Herrera that she was dealing with some emotional issues following the death of her mother and the loss of a friend, who died in a house fire. Herrera offered to counsel T.M. at no charge. T.M. told her grandmother and custodian, Debbie Davis, about Herrera's offer, but Davis was not comfortable with the idea. Nevertheless, T.M. and Herrera exchanged text messages over approximately a two-week period of time. One of the messages, received in the middle of class, said, "Hey sexy." Middle School student A.D. observed this text on T.M.'s phone. A.D. also observed another text from Herrera composed late at night, which stated, "I wish you were here." A.D. reported these texts to her father. The next day, A.D. and her father met with Principal Berry and informed her of A.D.'s observations.

Debbie Davis, T.M.'s grandmother and legal guardian, also complained to Principal Berry that Herrera had sent inappropriate communications to T.M. Specifically, Davis stated that Herrera asked T.M. to meet at the park, offered to give T.M. a ride to a nearby town, and

referred to T.M. as "sweetie" in at least one of the communications.  Davis told Principal Berry she did not want Herrera to have any further contact with T.M. at school.

The full extent of Principal Berry's investigation into the complaints is unclear.[1]  Davis testified that Principal Berry did look at cell phone records and social media information in her presence during one of their meetings regarding Herrera's communications with T.M. Ultimately, Principal Berry agreed to takes steps to prevent Herrera from having contact with T.M.  Principal Berry also took additional investigatory actions immediately after speaking with A.D. and her father regarding the text messages A.D. observed on Plaintiff's cell phone. Specifically, Principal Berry directed A.D. to retrieve T.M. cell phone so that she could verify A.D.'s complaint; however, when A.D. returned with T.M.'s cell phone, all the text messages had apparently been deleted from the cell phones memory.  Further, Herrera testified that Principal Berry spoke with him about the complaints surrounding his communications with T.M. Moreover, Herrera confirmed that Principal Berry advised him to have no further contact with T.M.  Herrera did not have any contact with T.M. following Principal Berry's admonishment. According to Herrera, Principal Berry later told him that T.M. had recanted her statements regarding the inappropriate test messages.

Plaintiff first met Herrera prior to her eighth grade year of school while Herrera was providing counseling services to other students.  During Plaintiff's eighth and ninth grade years, Plaintiff and her friends would sometimes go to the room where Herrera worked and talk with him while they were waiting to go home after school.  This happened no more than once a week during Plaintiff's eighth and ninth grade years of school.  It is undisputed that Plaintiff was never alone behind closed doors with Herrera at on School District property.

---

[1] The Court notes that neither party deposed Principal Berry to determine the full extent of the investigatory actions taken.

In 2010 and 2011, during Plaintiff's tenth grade year of school, Herrera and Plaintiff began exchanging a large volume of text messages, many containing flirtatious and sexual content, at all times of the day.  The majority of the communication between Plaintiff and Herrera was by text message.  Over the course her sophomore year of high school, Plaintiff spoke with Herrera in-person at school no more than seven times.  On one occasion, before Christmas break in 2010, Herrera kissed Plaintiff in a conference room in a school building after school.  On another occasion, Herrera texted Plaintiff during class and asked if the two could talk.  When Plaintiff informed Herrera that she was unable to talk to him because she was in class, Herrera used his authority to remove her from class and took her outside the school building to talk.  Once outside, Herrera spoke with Plaintiff about difficulties he was experiencing in his home life.

In December or January of the 2010-11 school year, Plaintiff contacted her mother, Tiffany Lang, and asked permission for Herrera to drive her home because the roads were icy.  Plaintiff told her mother that Herrera was also giving a ride to another student.  Tiffany Lang gave permission.  Herrera took the other student home first—leaving Plaintiff and Herrera in the car alone.  On the way to Plaintiff's house, Herrera told Plaintiff that he had romantic feelings for her.  Herrera dropped Plaintiff off at her home and left.  Plaintiff then sent Herrera a text stating that Herrera should have kissed her.  Herrera subsequently returned to Plaintiff's house and kissed Plaintiff.[2]  Several months later, Plaintiff asked her mother if Herrera could take her to the high school graduation at the end of the 2010-11 school year.  After Plaintiff's mother agreed, Herrera picked Plaintiff up at her house and the two went to the graduation together.

---

[2] Plaintiff testified that she sent Herrera the text message, in which she said, "Too bad I didn't kiss you, LOL JK," as a joke meant to diffuse the awkward situation created by Herrera's statements regarding his romantic feelings for her.  Plaintiff also testified that she did not intend for Herrera to act on her statements, and, consequently, after Herrera returned to Plaintiff's residence expecting a kiss and refusing to leave until Plaintiff complied, Plaintiff reluctantly submitted so that Herrera would leave.

In May of 2011, while school was adjourned for the summer, Herrera came over to Plaintiff's house while her mother was absent. Plaintiff and Herrera had a conversation regarding their respective, mutual, romantic feelings towards one-another.  Plaintiff and Herrera did not have sexual intercourse that day.

Herrera came to Plaintiff's house again the following week.  Herrera tried to fondle Plaintiff, but ceased his advances after Plaintiff said no.  The following week, Herrera came to Plaintiff's house again, and they had sexual intercourse for the first time.  At the time, Plaintiff was seventeen (17) years old.  During May and June of 2011, Plaintiff and Herrera had sexual intercourse on four occasions, each taking place at Plaintiff's house while her mother was not present.  There is a genuine dispute as to whether the sex was consensual.

Although both Plaintiff and Herrera sought to keep the relationship concealed from others, Herrera's wife eventually discovered the relationship.  In June or July of 2011, Herrera's wife called Plaintiff's cell phone and left a voice mail message—urging Plaintiff to "leave her husband alone."  This prompted Plaintiff to tell her mother about her relationship with Herrera. Shortly thereafter, the School District learned of the relationship between Plaintiff and Herrera. Alfred Gaches, the School District's superintendent, directed the middle school principal, Jerry Hurst, to tell Herrera that he could not return to the School District.  Hurst did so.  Herrera never returned to the School District after the end of the 2010-11 school year.

Following the incident, Plaintiff transferred to Sapulpa High School, where she graduated in May of 2013.  Plaintiff reports suffering increased anxiety, panic attacks, nightmares, flashbacks, and motivational difficulties at school following the termination of relations with Herrera.

## DISCUSSION

As a general rule, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  An issue is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

### A.  Title IX

Title IX provides in pertinent part that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a). Title IX encompasses sexual harassment of a student by a teacher and is enforceable through an implied private right of action for damages against a school district.  *Franklin v. Gwinnett County Public School*, 503 U.S. 60, 75-76 (1992).  As an initial matter, it is uncontested that the School District is subject to the terms of Title IX because it receives federal financial assistance.

Pursuant to Title IX, liability may be imposed on an educational institution for an individual's sexual harassment of a student only if a school official has actual notice of the misconduct and acts with deliberate indifference in failing to respond to the situation. *Gebser v.*

*Lago Vista Independent School District*, 524 U.S. 274 (1998); *see also Morse v. Regents of University of Colorado*, 154 F.3d 1124 (10th Cir. 1998); *Bostic v. Smyrna School District*, 418 F.3d 355, 360 (3d Cir. 2005). Accordingly, the School District is subject to liability "(1) 'only if the [school] remains deliberately indifferent to acts of harassment of which it has actual knowledge,' (2) the harassment was reported to an 'appropriate person ... with the authority to take corrective action to end the discrimination,' and (3) the harassment was 'so severe, pervasive and objectively offensive that it ... deprived the victim of access to the educational benefits or opportunities provided by the school.'" *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1152 (10th Cir. 2006) (internal citations omitted).

**1. Deliberate Indifference**

The School District argues that J.D. failed to demonstrate that the high school principal was deliberately indifferent. Title IX "does not require specific responses [but] it does require a reasonable response once a school receives actual notice of a substantial risk." *Vance v. Spencer County Public School District*, 231 F.3d 253, 262 (6th Cir. 2000). Indeed, "[t]he deliberate indifference standard is a high one. Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference … ." *Doe on Behalf of Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). Often, the minimum required response to avoid "deliberate indifference" is for the school to conduct a legitimate investigation.

Having carefully reviewed the parties' submissions, and viewing the evidence in the light most favorable to plaintiff and making all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff has failed to present evidence sufficient to demonstrate that Principal Berry was deliberately indifferent to the risk of harm to students. The evidence in the record shows

8

that after receiving complaints regarding inappropriate communications between Herrera and T.M., Principal Berry conducted an investigation into the matter.  Specifically, Debbie Davis testified that Principal Berry met with her on at least two occasions to discuss her concerns regarding the inappropriate communications.  The record also shows that after A.D.'s father reported that his daughter observed inappropriate messages on T.M.'s cell phone, Principal Berry sent A.D. to retrieve the cell phone in order to further investigate the complaint.  Further, Herrera testified that Principal Berry discussed these allegations of misconduct with him and ordered Herrera not to have any further contact with T.M.  It is undisputed that Herrera complied with this order.

Plaintiff argues that Principal Berry's investigation was clearly unreasonable under the circumstances.  Plaintiff argues that "[w]hatever 'investigation' Principal Berry undertook as a result of the report of Herrera sending sexually inappropriate text and internet messages … did not include an examination of the full scope and contents of the messages or Herrera's interactions and messaging to other school girls."  [Doc. No. 124, 21].  But, as the School District aptly noted in its Reply, Plaintiff submitted no evidence to support this contention and did not depose Principal Berry in order to determine the scope of the investigation.  [Doc. No. 161, 2].  Instead, Plaintiff asks the Court to conclude that she has met her burden of demonstrating that Principal Berry's investigation was clearly unreasonable by pointing to an evidentiary void regarding the scope the investigation.

Plaintiff has the burden of presenting evidence to establish each of the elements of her claim, and cannot rely on a lack of evidence regarding a particular element of her claim for purposes of surviving a motion for summary judgment.  It is clearly established that "[a] defendant need not prove a negative when it moves for summary judgment on an issue that the

plaintiff must prove at trial." *Parker v. Sony Pictures Entertainment, Inc.*, 260 F.3d 100, 111 (2d Cir. 2001); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Elkins v. Richardson-Merrell, Inc.*, 8 F.3d 1068, 1071 (6th Cir. 1993) ("Because Merrell does not bear the ultimate burden of persuasion on the causation issue, Merrell need only point out the lack of a genuine issue regarding causation."); *Rambarran v. Bank of America, N.A.*, 609 F. Supp. 2d 1253, 1256 (S.D. Fla. 2009) ("When the motion is filed by a defendant and addresses the adequacy of plaintiff's causes of action, the defendant's burden is not to produce evidence negating the existence of material facts; rather, the burden is to point out the absence of evidence supporting the nonmoving party's case."); *Plummer v. District of Columbia*, 596 F. Supp. 2d 70, 74 (D.D.C. 2009) ("The defendant's burden as the moving party may be discharged by showing an absence of evidence in support of the plaintiff's case."). Instead, a defendant "need only point to an absence of proof on plaintiff's part, and, at that point, plaintiff must designate specific facts showing that there is a genuine issue for trial." *Id.* Therefore, Plaintiff cannot meet her burden to establish deliberate indifference by simply pointing to an evidentiary void in the record with regard to Principal Berry's investigation.

Based on the evidence in the record, the Court finds that Plaintiff has failed to demonstrate that Principal Berry's investigation was clearly unreasonable in light of the facts known to her at the time. Accordingly, the School District is entitled to summary judgment on Plaintiff's Title IX claim.[3]

## B.  28 U.S.C. § 1983

Plaintiff also asserts claims under 42 U.S.C. § 1983, arguing that School District is liable because it enacted policies and customs that violated Plaintiff's Fourteenth Amendments rights.

---

[3] Even if Plaintiff could meet her burden with regard to deliberate indifference, the Court finds that the School District would nevertheless be entitled to summary judgment on Plaintiff's Title IX claim because Plaintiff cannot meet her burden with regard to the remaining elements of the claim.

In order to establish a claim under 42 U.S.C. § 1983, a plaintiff must prove a deprivation of a constitutional right by someone acting under color of state law.  *See A. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  In suits against a governmental entity, it is not enough for plaintiff to show the deprivation of a constitutional right by an agent or employee of the governmental unit.  Rather, a civil rights plaintiff must identify an official policy or custom of the government that causes the deprivation of a constitutional right.

Plaintiff submits two theories of recovery under § 1983.  First, Plaintiff argues that the School District is liable for enacting policies or customs that were deliberately indifferent to the risk of sexual harassment of students in violation of the Equal Protection Clause.  Second, Plaintiff seeks to recover pursuant to the "danger creation" theory, arguing that her substantive due process rights were violated by the School District conduct.

## 1.  Equal Protection Clause

"The Equal Protection Clause confers a federal constitutional right to be free from sex discrimination."  *Personnel Administrator of Mass. v. Feeney*, 442 U.S. 256, 273 (1979); *Williams v. Board of Regents of University System of Georgia*, 477 F.3d 1282, 1300–1301 (11th Cir. 2007).  Sex discrimination is understood ordinarily to include sexual harassment.  *Murrell v. Sch. Dist. No. 1, Denver, Colo.*, 186 F.3d 1238, 1249 (10th Cir. 1999).

"A school district's liability for sexual harassment under the Equal Protection clause is analyzed under a municipal liability framework."  *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124-25 (10th Cir. 2008) (citing *Murrell*, 186 F.3d at 1249–50).  Therefore, "[a] claim of municipal liability for sexual harassment requires that the state employee's discriminatory conduct be representative of an official policy or custom of the institution or are taken by an official with final policymaking authority."  *Id.* at 1125 (internal

11

citations omitted).  However, "[i]n the absence of an official policy, a municipality may still be liable for the widespread and persistent practice of sexual harassment which constitutes a custom." *Id.*

Plaintiff contends that the School District is liable for two reasons: (1) the School District had a custom of failing to receive, investigate, or act on complaints of constitutional violations[4]; and, alternatively, (2) the School District is liable as a result of Principal Berry's actions in responding to such complaints.  Specifically, Plaintiff alleges that the School District failed to follow its own policies regarding sexual harassment and reporting thereof.  In order to prevail under this theory, which essentially imputes liability on the School District for failing to take action, Plaintiff must prove "(1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury to the plaintiff."  *Id.*; *see also J.M. ex rel. Morris v. Hilldale Indep. Sch. Dist. No. 1–29,* 397 Fed. App'x 445, 456 (10th Cir. 2010).

Plaintiff cannot prevail on this theory for two reasons.  First, the Court finds that Plaintiff has failed to present evidence sufficient to satisfy her burden to establish a persistent pattern of misconduct by the School District.  Plaintiff can identify only two prior complaints of sexual harassment to the School District, both pertaining to one incident of alleged sexual harassment of a student by Herrera.  Even if the Court assumes the School District responded to this incident inappropriately, it would still amount to a single incident.  As such, the record in this case is simply insufficient to establish a continuing, widespread, and persistent pattern of misconduct by

---

[4] Plaintiff presented expert evidence that the School District's sexual harassment policies applied to Hererra's conduct.  Because this matter is before the Court on the School District's motion for summary judgment, the Court must view the evidence in a light most favorable to Plaintiff.  Consequently, the Court is not required to address Plaintiff's contention that no policy existed with regard to sexual harassment by outside counselors.  However, even if the School District failed to implement a policy regarding sexual harassment by outside counselors, Plaintiff § 1983 Equal Protection claim would still fail because Plaintiff cannot meet her burden with regard to establishing a pattern of misconduct or deliberate indifference by school officials.

the School District.   Next, even if Plaintiff could establish a continuing, widespread, and persistent pattern of misconduct, Plaintiff cannot meet her burden with regard to the second element, which requires evidence to establish deliberate indifference to or tacit authorization of the misconduct by policy-making officials.   It is unnecessary to determine the identity of the School District's policymaking officials because Plaintiff has failed to demonstrate deliberate indifferent as to *any* School District employee.   As discussed above, Plaintiff has presented no evidence to establish that Principal Berry was deliberately indifferent to the complaints she received regarding Herrera.   Further, the record contains no evidence that any other School District employee was deliberately indifferent to Herrera's inappropriate behavior.   Accordingly, Defendant is entitled to summary judgment on Plaintiff's § 1983 Equal Protection claim.

**b.  § 1983 Danger Creation Claim**

Plaintiff also seeks recovery under a theory of state-created danger, which is recognized as a basis for substantive due process claims.  *See Vicente–Elias v. Mukasey*, 532 F.3d 1086, 1095 (10th Cir. 2008).  Under this theory, state actors are liable under § 1983 only for their own actions except where "a state actor affirmatively acts to create, or increases a plaintiff's vulnerability to, or danger from private violence."  *Robbins v. Oklahoma*, 519 F.3d 1242, 1251 (10th Cir. 2008).

> To state a prima facie case, the plaintiff must show that (1) state actors created the danger or increased the plaintiff's vulnerability to the danger in some way, (2) the plaintiff was a member of a limited and specifically definable group, (3) the defendants' conduct put the plaintiff at substantial risk of serious, immediate, and proximate harm, (4) the risk was obvious or known, (5) the defendants acted recklessly in conscious disregard of that risk, and (6) the conduct, when viewed in total, shocks the conscience.

*J.M.*, 397 F. App'x at 458.

After carefully reviewing the record, the Court finds Plaintiff cannot meet her burden with regard to the fifth and sixth elements.  With regard to the fifth element, for substantially the

same reasons Plaintiff has not presented evidence sufficient to meet her burden with regard to deliberate indifference, Plaintiff cannot establish that School District officials acted recklessly in conscious disregard of any risk to Plaintiff.  As for the sixth element, the Court finds the evidence in the record insufficient to support a finding that School District officials conduct shocks the conscience.  Plaintiff can point to no conduct by any School District employee sufficient to demonstrate the type of "brutal" and "offensive" behavior required to meet the "high standard of conscience shocking behavior."   *Sutherlin v. Indep. Sch. Dist. No. 40 of Nowata Cnty., Okla.*, 12-CV-636-JED-PJC, 2013 WL 1975644 (N.D. Okla. May 13, 2013) (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *Breithaupt v. Abram*, 352 U.S. 432, 435, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957)); *Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist.,* No. 19, 77 F.3d 1253, 1258 (10th Cir. 1996) (teacher's behavior in repeatedly calling student "prostitute" and ignoring other students' similar treatment was not conscience shocking); *Liebson v. New Mexico Corr. Dep't*, 73 F.3d 274, 278 (10th Cir. 1996) (prison librarian raped by inmate where corrections officials removed guard from the library was not "'so egregious, outrageous and fraught with unreasonable risk so as to shock the conscience'"); *but cf. Armijo By & Through Chavez v. Wagon Mound Pub. Sch.*, 159 F.3d 1253, 1264 (10th Cir. 1998) (finding as conscience shocking school counselor's taking of mentally disabled teenager home after suspension and leaving him alone where school was aware that teen was suicidal and distraught, had access to firearms, and teen ultimately committed suicide)).   Accordingly, Plaintiff's § 1983 Danger Creation claim must be dismissed.

## C.  State Law Negligence Claims

Plaintiff also asserts state law negligence claims against the School District. Under Oklahoma law, negligence is defined as "the failure to exercise ordinary care to avoid injury to

another's person or property." *Lillard v. Stockton*, 267 F. Supp. 2d 1081, 1118 (N.D. Okla. 2003) (quoting OUJI § 9.2). Ordinary care is "the care which a reasonably careful person would use under the same or similar circumstances." *Id.* "[T]he three essential elements of a prima facie case of negligence are: (1) a duty owed by the defendant to protect the plaintiff from injury, (2) a failure to properly perform that duty, and (3) the plaintiff's injury being proximately caused by the defendant's breach." *Lockhart v. Loosen*, 943 P.2d 1074, 1079 (Okla. 1997). The existence of a duty is a question of law, whereas breach and causation are generally questions of fact. *See Schovanec v. Archdiocese of Okla. City*, 188 P.3d 158, 173 (Okla. 2008); *Bray v. St. John Health Sys ., Inc.*, 187 P.3d 721, 723, 725 (Okla. 2008).

The School District argues that Plaintiff cannot establish that her injuries were proximately caused by any negligent conduct by School District employees. [Doc. No. 161, 3-4]. Specifically, Defendant avers that

> [t]o the extent [Plaintiff] consented to sexual relations with Herrera, the School District cannot be held responsible for any injuries [Plaintiff] suffered. To the extent [Plaintiff] did not consent, Herrera's action[s] constituted intentional torts. An intentional tort by a third party is a supervening cause that relieved the original actor of liability for its negligence.

[*Id.*] The Court agrees.

"Failure to establish that the defendant's negligence was the proximate cause of the harmful event is fatal to [a] plaintiff's [negligence] claim." *Lefthand v. City of Okmulgee*, 968 P.2d 1224, 1225-26 (Okla. 1998) (quoting *Thompson v. Presbyterian Hospital, Inc.*, 652 P.2d 260, 263 (Okla. 1982) (internal quotation marks omitted). There are two parts to proximate cause: cause in fact and legal causation. Cause in fact "'refers to everything which contributed to a result, which would not have occurred without'" the School Board's negligence. *Brewer v. Murray*, 292 P.3d 41, 53 (Okla. Civ. App. 2012) (*quoting Akin v. Missouri Pac. R.R. Co.*, 977 P.2d 1040, 1054 n. 79 (Okla. 1998)). But liability for negligent conduct is further limited by

15

legal causation.  *Id*.  Legal causation cuts off a defendant's liability for tenuous acts, which means plaintiffs must prove that their injuries are "the result of ***both*** *the natural and probable* consequences of the primary negligence," or that their injuries were foreseeable.  *Lockhart*, 943 P.2d at 1079 (emphasis original).  Consistent with these principles:

> The causal connection between an allegedly negligent act and an injury can be broken by a supervening cause which breaks the causal connection between the defendant's negligence and the injury.  In such an instance, any original negligence is deemed a remote cause or mere condition.  Generally, the act of a third person in committing an intentional tort or crime is a supervening cause which relieves the initial negligent actor from liability for resulting harm or injuries.

*Lefthand*, 968 P.2d at 1226 (internal citations omitted).

Generally, the question of proximate cause is a question of fact to be resolved by a jury.  *Id.* at 1226.  However, "the question of proximate cause becomes a question of law when the facts are undisputed and there is no evidence from which a jury could reasonably find a causal connection between the allegedly negligent act and the injury." *Id.*  Here, viewing the facts in a light most favorable to the Plaintiff, the Court finds that Plaintiff cannot establish that the School Board's negligence was the proximate cause of her injuries.

## CONCLUSION

After review of the briefs, and for the reasons outlined above, the School District's Motion for Summary Judgment, [Doc. No. 107], is **GRANTED.**

James H. Payne
United States District Judge
Northern District of Oklahoma